In re Jennifer Nicol YATES, Debtor.

Unified People's Federal Credit
Union, Appellant,

v.

Jennifer Nicol Yates and Michael
Dale Yates, Appellees.

BAP No. WY–05–015.
Bankruptcy No. 04–20069.

United States Bankruptcy Appellate Panel
of the Tenth Circuit.

Sept. 29, 2005.

Donald A. Miller of Graves, Miller & Kingston, P.C., Cheyenne, Wyoming, for Appellant.

Before NUGENT, THURMAN, and ROMERO [1], Bankruptcy Judges.

OPINION

THURMAN, Bankruptcy Judge.

Unified People's Federal Credit Union (the "Credit Union") appeals a Judgment of the United States Bankruptcy Court for the District of Wyoming imposing sanctions on the Credit Union for violation of the automatic stay under 11 U.S.C. § 362(a).[2] For the reasons stated below, the bankruptcy court's Judgment is AFFIRMED.

## I. *Factual Background*

The facts underlying this appeal are not in dispute. On January 12, 2001, the Credit Union entered a loan agreement with Michael and Jennifer Yates (Debtors). Under the loan agreement, Debtors borrowed $7,614.35 and opened an overdraft account with the Credit Union, while the Credit Union took a security interest in Debtors' 1987 GMC pickup (the "GMC"). On April 1, 2001, the Credit Union loaned Debtors $43,212.80 as purchase money for a 1990 Four Winns boat and trailer, a 1986 Pace Arrow motor home, and a 2000 Jeep Grand Cherokee. The April 1 loan was secured by a security interest in the boat and trailer, the motor home, the Jeep Cherokee, and the Debtors' GMC. On August 13, 2001, the Credit Union granted Debtors another overdraft protection account of $500.00, and on December 13,

---

1. Honorable Michael E. Romero, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

2. All future statutory references in the text are to title 11 of the United States Code.

2001, the Credit Union loaned Debtors $2,500.00. Both of these loans were secured by the above listed collateral.

By January 9, 2004, Debtors were delinquent on their obligations owing to the Credit Union by $10,000.00. On January 9, 2004, the Credit Union lawfully repossessed the boat and trailer, the motor home, and the GMC. The Credit Union makes much of the fact that the GMC was without a working engine when repossessed. Only the GMC is at issue in this appeal.

Debtors filed for bankruptcy under Chapter 13 on January 16, 2004. Also on January 16, 2004, Debtors sent the Credit Union notice of the automatic stay and a letter demanding return of the GMC. Debtors sent the Credit Union a second demand letter on January 29, 2001. On February 10, 2004, the Credit Union refused to turn over the GMC, stating that the GMC needed an engine and the Credit Union could not understand why Debtors needed the vehicle.

On March 2, 2004, the Credit Union filed a Motion for Relief from Automatic Stay. On March 16, 2004, the Bankruptcy Court entered an Order Regarding Debtor's Motion for Compliance with the Provisions of the Automatic Stay and for Sanctions on Contempt. The Bankruptcy Court found the Credit Union's refusal to turn over the GMC was a violation of the automatic stay, and awarded attorneys fees and court costs to Debtors. The Credit Union appealed the order to this Court. This Court remanded the case to the Bankruptcy Court to make findings of fact and conclusions of law and to enter a judgment accordingly. On remand, the Bankruptcy Court entered a Judgment against the Credit Union. The Bankruptcy Court found that the Credit Union had violated the automatic stay by exercising control over the GMC, in that the Credit Union retained possession of the GMC after the Debtors demanded its turnover. The Bankruptcy Court further held that § 362(h) required the Court to award actual damages to the Debtors for the Credit Union's violation of the automatic stay. Accordingly, the Bankruptcy Court awarded the Debtors attorneys' fees.

On December 20, 2004, Debtors converted their Chapter 13 case to Chapter 7. Michael Yates was ineligible for Chapter 7 relief and was subsequently dismissed. This appeal involves only Jennifer Yates.

## II. *Appellate Jurisdiction*

■ A Bankruptcy Appellate Panel, with the consent of the parties, has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges within the circuit.[3] A bankruptcy court's order to turn over property of the estate and imposing sanctions is a final order.[4] Neither party filed an election seeking review by the United States District Court for the District of Wyoming pursuant to 28 U.S.C. § 158(c)(1) and Bankruptcy Rule 8001(e). Thus, the parties have consented to our review.

## III. *Standard of Review*

■ Conclusions of law are reviewed *de novo.* Whether the Bankruptcy Court properly applied §§ 362(a) and 362(h) to the undisputed facts of this case is an issue of law, and subject to *de novo* review.[5]

---

3. 28 U.S.C. §§ 158(a), (b)(1), (c)(1) (2005).

4. *See Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945); *Smith v. Revie (In re Moody),* 817 F.2d 365 (5th Cir.1987).

5. *Diviney v. NationsBank of Texas, N.A. (In re Diviney),* 225 B.R. 762, 769 (10th Cir. BAP 1998); *Barnett v. Edwards (In re Edwards),* 214 B.R. 613, 618 (9th Cir. BAP 1997).

## IV. Discussion

### A. Refusal to Turn Over Property of the Estate Is a Violation of the Automatic Stay

■ Section 362(a) states:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of-

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.][6]

At issue in this case is whether the Credit Union's retention of the GMC after the Debtor's bankruptcy filing constituted an exercise of control in violation of the automatic stay. This Court holds that the Credit Union violated the automatic stay by refusing to turn over the GMC after Debtor filed her bankruptcy petition.

There is some disagreement among bankruptcy courts as to whether a creditor's retention of property of the estate after a debtor files for bankruptcy constitutes an "exercise of control" in violation of the automatic stay. Persuaded by the interplay between § 362(a) and § 542(a), we hold that it does.

First, § 362(a)(3) imposes a stay on the "exercise [of] control over property of the estate."[7] According to Black's Law Dictionary "control" is "[t]o exercise power or influence over" something.[8] On a more practical level, common understanding dictates that if the exercise of control means anything, it means the ability to keep others from access to or use of an object.

Second, § 542(a) states that a creditor with possession of property of the estate at the time of filing "shall" turn over the property to the trustee.[9] The language of this turnover provision is mandatory. This mandatory language squares with the language and impact of the automatic stay. By requiring a creditor to turn over property of the estate upon the filing of a bankruptcy petition, § 542(a) prevents the continued exercise of control over property of estate—a violation of the automatic stay. Thus, § 542(a) works to avoid what § 362(a) forbids—the retention of property of the estate after filing.

The Credit Union urges this Court to adopt the holding of *In re Young*, in which the Court held that the automatic stay merely requires a creditor with possession of property of the estate to "maintain the status quo."[10] Stating that the phrase "to exercise control" is ambiguous, the *Young* court held that the Code only expressly limits *obtaining* possession of property of the estate, not *retaining* possession of it. *Young* also lays heavy stress on pre-Code practice, heeding the Supreme Court's aphorism that " '[w]hen Congress amends the bankruptcy laws, it does not write on a clean slate.' "[11] The court based much of its reasoning on the requirement that a debtor provide a creditor with adequate protection during the life of a bankruptcy case.[12] Only one Circuit follows this

---

6. 11 U.S.C. § 362(a)(3) (2005).

7. *Id.*

8. *Black's Law Dictionary* 267 (Abridged 7th ed.2000).

9. 11 U.S.C. § 542(a) (2005).

10. 193 B.R. 620 (Bankr.D.D.C.1996).

11. *Id.* at 624 (quoting *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (further quotation omitted)).

12. *Id.*

view.[13]

We are not persuaded by this approach. We also believe our holding in this case may lead to a more uniform application of §§ 362(a)(3) and 542(a).[14] As a practical matter, there is little difference between a creditor who obtains property of the estate before bankruptcy is filed, or after bankruptcy is filed.[15] The ultimate result is the same—the estate will be deprived of possession of that property. This is precisely the result § 362 seeks to avoid.[16]

The *Young* court's approach also threatens to undermine the burden allocation for a creditor seeking relief from the automatic stay. Section 362(d) states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if-

 (A) the debtor does not have an equity in such property; and

 (B) such property is not necessary to an effective reorganization[.] [17]

Section 542(a) states that a creditor "shall deliver to the trustee, and account for, [property of the estate] unless such property is of inconsequential value or benefit to the estate." [18]

Section 362(d) works in tandem with § 542(a) to provide creditors with what amounts to an affirmative defense to the automatic stay. Section 362(d) allows a creditor to obtain relief from the stay "after notice and a hearing." Section 362(d) relief is for creditors to invoke.[19] The onus is on the creditor to seek relief from the stay.[20] In addition, § 542(a) *requires* that a creditor turn over possession of "property that the trustee may use, sell, or lease under § 363." [21] The only exception to § 542(a)'s compulsory turnover provision is if "such property is of inconsequential value or benefit to the estate." [22]

---

**13.** *Capital Factors, Inc. v. Empire for Him, Inc. (In re Empire for Him, Inc.),* 1 F.3d 1156 (11th Cir.1993).

**14.** Today's holding is in accordance with the vast majority of courts ruling on this issue. *See Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773 (8th Cir.1989); *TranSouth Fin. Corp. v. Sharon (In re Sharon),* 234 B.R. 676 (6th Cir. BAP 1999); *Expeditors Int'l of Washington, Inc. v. Colortran, Inc. (In re Colortran, Inc.),* 210 B.R. 823 (9th Cir. BAP 1997), *aff'd in relevant part, vacated in part,* 165 F.3d 35 (9th Cir.1998) (unpublished); *In re Jackson,* 251 B.R. 597 (Bankr.D.Utah 2000) (citing cases).

**15.** *Knaus,* 889 F.2d at 775.

**16.** *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 206–07, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.").

**17.** 11 U.S.C. § 362(d) (2005).

**18.** 11 U.S.C. § 542(a) (2005).

**19.** *See In re Anthem Communities/RBG, LLC,* 267 B.R. 867, 870–71 (Bankr.D.Colo.2001); *In re Siciliano,* 167 B.R. 999, 1009–10 (Bankr.E.D.Pa.1994); *In re Wolsky,* 53 B.R. 751, 756 (Bankr.D.N.D.1985) (quoting *First Nat'l Bank of Denver v. Turley,* 705 F.2d 1024 (8th Cir.1983)).

**20.** *See, e.g., In re Wolsky,* 53 B.R. at 756.

**21.** 11 U.S.C. § 542(a) (2005). Section 363(b) allows the trustee to use, sell, or lease property of the estate.

**22.** 11 U.S.C. § 542(a) (2005); *see Taoka v. State of Ohio, Dept. of Health (In re Floro*

It cannot be coincidence that §§ 362(d)(2) and 542(a) both allow relief to a creditor where the estate has little or no equity interest in the property. Under both provisions, the burden is on the creditor to demonstrate the estate's lack of equity.[23]

Because the initial burden to demonstrate a lack of equity is on the creditor, the Bankruptcy Code must also contemplate that the creditor will have an incentive to meet this burden. If a creditor were permitted to retain possession of property of the estate after a debtor files bankruptcy, it would have no such incentive. It would be the debtor—not the creditor—who would seek the court's remedies. One of the fundamental benefits of the automatic stay is to allow the debtor to retain the rights of possession and use of property of the estate.[24] Until the creditor shifts the burden of proof by demonstrating a lack of equity, the debtor should not have to show the court why it is entitled to a right of possession; this right is incident to the automatic stay. *Young* ignores this burden allocation. Under *Young*, the creditor who takes possession of property of the estate before the debtor files bankruptcy may continue to hold that property until *the debtor* shows the court that the estate can afford adequate protection to the creditor.[25] Thus, the *Young* decision would allow a creditor to unilaterally determine what is of inconsequential value to the estate, and gives far too much discretion to creditors.

This Court is also persuaded by the United States Supreme Court's decision in *United States v. Whiting Pools, Inc.*[26] In *Whiting Pools*, the Court interpreted § 542(a) in the context of Chapter 11 where a creditor seized property before bankruptcy was filed.[27] The Court held that § 542(a) *requires* a creditor in a Chapter 11 case to affirmatively turn over property of the estate once bankruptcy is filed.[28] "In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings."[29] Although the Court specifically narrowed the holding of *Whiting Pools* to govern only Chapter 11 cases,[30] we see no reason why it

*Nursing Home, Inc.),* 64 B.R. 43, 45 (Bankr. N.D.Ohio 1986) (holding a debtor's revoked nursing license is of inconsequential value so long as the debtor cannot revive the revocation). *But see Camacho v. United States,* 190 B.R. 895, 901 (D.Alaska 1995) (holding a debtor's interest in encumbered dividends where the debtor lacks any equitable title to the property is not of inconsequential value so long as ownership of the property is subject to bona fide dispute).

23. *See* 11 U.S.C. § 362(g) (2005); *see also In re Wolsky,* 53 B.R. at 756.

24. *TranSouth Financial Corp. v. Sharon (In re Sharon),* 234 B.R. 676, 682 (6th Cir. BAP 1999) (holding that "possession of the Debtor's car was part of the bundle of rights that became 'property of the estate' at the Chapter 13 petition").

25. *In re Young,* 193 B.R. at 627–28 ("If the creditor refuses to turn over property seized prepetition, then the debtor or trustee simply files an adversary proceeding seeking turnover under § 542(a) against the creditor possessing property seized prepetition and proves that the creditor is being accorded adequate protection of its interest in the property in return for turnover.") (footnote omitted).

26. 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

27. *Id.* at 200–01, 103 S.Ct. 2309.

28. *Id.* at 205, 103 S.Ct. 2309.

29. *Id.* at 202, 103 S.Ct. 2309.

30. *Id.* at 208 n. 17, 103 S.Ct. 2309 ("We express no view on the issue of whether § 542(a) has the same broad effect in liquidation or adjustment of debt proceedings."). *But see Knaus,* 889 F.2d at 775; *Sharon,* 234

should not apply with equal force to proceedings under another rehabilitation chapter, Chapter 13. In Chapter .13, the debtor restructures his or her estate and accompanying debt. A Chapter 13 debtor's need to retain estate property is indistinct from that of a Chapter 11 debtor. There is no indication in § 542(a) or in the *Whiting Pools* decision itself that the automatic stay operates differently between Chapter 11 and Chapter 13.

Accordingly, we AFFIRM the Bankruptcy Court's holding that the Credit Union violated the automatic stay by refusing to turn over the GMC after the Debtors filed for bankruptcy. The Credit Union exercised control over the GMC when it refused to turn it over to the estate. In doing so, the Credit Union effectively denied the estate the right of possession granted to the Debtors by the automatic stay. It makes no difference that the Credit Union took lawful possession of the GMC before the Debtors filed for bankruptcy.

## B. The Bankruptcy Court Correctly Imposed Sanctions on the Credit Union

 Section 362(h) states:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.[31]

In *Diviney v. NationsBank of Texas, N.A. (In re Diviney)*, another panel of this Court held that for purposes of § 362(h):

"A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded."[32]

It is clear that the Bankruptcy Court correctly applied the principles of *Diviney* in this case. It is undisputed that the Credit Union knew of the automatic stay in this case. It received two letters from Debtors' counsel indicating that Debtors had filed for bankruptcy, and demanding turnover of the GMC. It is also undisputed that the Credit Union intentionally refused to turn over the GMC. In fact, the Credit Union sent a letter to Debtors' counsel stating their intention not to turn over the GMC. As discussed above, this refusal was a violation of the automatic stay under § 362(a)(3). The Bankruptcy Court imposed sanctions against the Credit Union for this violation to cover Debtor's attorneys' fees and costs. We hold the sanctions were not only appropriate, but mandated by § 362(h).

Finally, the Credit Union argues that it had no other alternative but to retain the GMC to protect its interests. We note that in this case, the Credit Union delayed filing its stay relief motion for almost two months after receiving notice of the bankruptcy. Both § 362(f) and Bankruptcy Rule 4001 expressly provide that stay hearings may be conducted on an expedited bases. In appropriate circumstances ex parte temporary orders maintaining the

B.R. at 683 (applying the reasoning of *Whiting Pools* to a Chapter 13 case).

**31.** 11 U.S.C. § 362(h) (2005).

**32.** 225 B.R. 762, 773 (10th Cir. BAP 1998) (adopting the standard of *INSLAW, Inc. v. United States (In re INSLAW, Inc.)*, 83 B.R. 89, 165 (Bankr.D.D.C.1988)).

status quo could be sought until a more comprehensive hearing can be held.[33] This assures that irreparable harm may be prevented if the creditor's interests will be damaged before there is an opportunity to give notice and a hearing on the creditor's motion.[34] As part of a request for such accelerated relief, the Credit Union could have demanded adequate protection. The Credit Union did not avail itself of these options.

## V. *Conclusion*

The Bankruptcy Court's Judgment is AFFIRMED.

33. 11 U.S.C. § 362(f) (2005) ("[T]he court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property . . . .").

