# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2077

THEODORE A. THOMPSON,

*Debtor-Appellant*,

*v.*

GENERAL MOTORS ACCEPTANCE CORPORATION, LLC,

*Creditor-Appellee*.

Appeal from the United States Bankruptcy Court
for the Northern District of Illinois, Eastern Division.
No. 08 B 2560—**A. Benjamin Goldgar**, *Judge.*

ARGUED FEBRUARY 10, 2009—DECIDED MAY 27, 2009

Before CUDAHY, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge.* This case involves an all too common occurrence that bankruptcy courts must deal with: a buyer defaults on his car payments, a secured creditor seizes the asset, the buyer files for Chapter 13 bankruptcy, and the big question that ensues is whether the creditor must return the car to the bankruptcy estate. In this case, we are asked to consider a procedural conflict between many bankruptcy courts within this

circuit, and those in the sixth, eighth, ninth, and tenth circuits.

We must decide whether an asset that a secured creditor lawfully seizes pre-petition must be returned to the buyer's estate after he files for Chapter 13 bankruptcy, and, if so, whether the creditor must immediately return the asset even in the absence of a showing that the debtor can adequately protect the creditor's interest in the asset. In the United States Bankruptcy Court for the Northern District of Illinois, it has been an accepted standard procedure for a creditor to retain possession of a seized asset until the creditor subjectively determines that the debtor has shown the creditor that it can provide adequate protection of the creditor's interests. If a dispute ensues, it is the debtor's obligation to litigate the adequate protection issue in turnover proceedings before the bankruptcy court. In the sixth, eighth, ninth, and tenth circuits, the procedure is just the opposite. Upon the debtor filing for Chapter 13, the creditor must immediately return the asset to the bankruptcy estate, and, if the debtor and creditor cannot achieve accord on the issue of adequate protection, it is the creditor's obligation to file a motion before the bankruptcy court.

Here, a creditor refused to relinquish possession of an asset because it felt that the debtor could not adequately protect its interests. The debtor claimed that this refusal violated the Bankruptcy Code's stay provisions and moved for sanctions against the creditor. The bankruptcy court denied this motion. Because we find that a plain reading of the Bankruptcy Code's provisions, the Supreme

Court's decision in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211 (1983), and various practical considerations require that a creditor immediately return a seized asset in which a debtor has an equity interest to the debtor's estate upon his filing of Chapter 13 bankruptcy, we reverse.

## I. BACKGROUND

On April 5, 2003, Debtor-Appellant Theodore Thompson entered into an installment contract with Creditor-Appellee General Motors Acceptance Corporation ("GMAC") for the purchase of a 2003 Chevy Impala. Thompson defaulted on his installment payments, and, on January 24, 2008, GMAC repossessed the vehicle.

On February 5, 2008, Thompson filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois. Needing his car to commute to work, on February 6, 2008, Thompson requested that GMAC return the vehicle to his bankruptcy estate. When GMAC refused to return the vehicle to the estate absent what it deemed "adequate protection" of its interests, Thompson moved for sanctions pursuant to 11 U.S.C. § 362(k), claiming that GMAC willfully violated the automatic stay provision in 11 U.S.C. § 362(a)(3).

The bankruptcy court denied the motion for sanctions because it found the *In re Nash*, 228 B.R. 669 (Bankr. N.D. Ill. 1999) and *In re Spears*, 223 B.R. 159 (Bankr. N.D. Ill. 1998) decisions, which held that a creditor need not return seized property to a debtor's estate absent ade-

quate protection of its interests, dispositive on the issue. Thompson sought direct appeal.

The bankruptcy court certified this case as one appropriate for direct appeal under 28 U.S.C. § 158(d)(2)(B)(i). On June 2, 2008, we found that it met the statutory requirements and accepted the appeal. As a result, we have jurisdiction under 28 U.S.C. § 158(d)(2)(A).[1]

## II. ANALYSIS

### A. Introduction

We review a bankruptcy court's underlying factual findings for clear error and its conclusions of law de novo. *Union Planters Bank, NA v. Connors*, 283 F.3d 896, 899 (7th Cir. 2002). A debtor is entitled to actual damages and attorneys' fees if he is "injured by any willful violation of a stay provided by this section" committed by a creditor. 11 U.S.C. § 362(k)(1). Under the Bankruptcy Code's stay provision, no creditor may commit "any act to obtain possession of property of the estate or of property from the estate or to *exercise control* over property of the estate"

---

[1] GMAC's argument that we are deprived of jurisdiction because Thompson filed his request for sanctions as a motion, rather than as an adversary complaint, is unavailing. Mere procedural miscues differ from jurisdictional deficiencies. *See Kontrick v. Ryan*, 540 U.S. 443, 453-54 (2004). Further, having jurisdiction in this case, we need not, and do not, take a position on whether Thompson should have filed his request for sanctions as an adversarial complaint rather than as a motion.

after a debtor has filed for bankruptcy. 11 U.S.C. § 362(a)(3) (emphasis added). In order to determine whether GMAC violated section 362(a)(3), we must resolve two questions. First, we must determine whether GMAC "exercised control" over property belonging to Thompson's bankruptcy estate simply because it refused to return it to the estate after Thompson filed for bankruptcy. If so, we must decide whether GMAC, or a like-situated creditor, is required to return the asset prior to the bankruptcy court establishing that the debtor can provide "adequate protection" of the creditor's interest in the asset.

## B.   GMAC "Exercised Control" Over Thompson's Vehicle

There is no debate that Thompson has an equitable interest in the Chevy, and, as such, it is property of his bankruptcy estate. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983) ("Section 541(a)(1) defines the 'estate' as 'comprised of all the following property, wherever located: (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case.' Although these statutes could be read to limit the estate to those 'interests of the debtor in property' at the time of the filing of the petition, we view them as a definition of what is included in the estate, rather than as a limitation."). GMAC contends, however, that it did not "exercise control" over the Chevy within the meaning of 11 U.S.C. § 362(a)(3). Rather, GMAC argues that it passively held the asset and that further action, such as selling the car, is required to satisfy the Code's definition of "exercising

control" over the asset. In support of this proposition, GMAC relies solely on *In re Spears*, 223 B.R. 159, 165 (Bankr. N.D. Ill. 1998), which simply reiterates the rationale expressed in *In re Young*, 193 B.R. 620, 624 (Bankr. D.D.C. 1996). These courts find that a creditor that retains possession of a lawfully seized vehicle does not take any action; instead, these courts reason that the creditor simply maintains the pre-bankruptcy status quo (creditor in possession of the asset), which is the purpose of the Code's automatic stay provision. They hold that the "Code restricts only obtaining possession of the property, rather than the passive act of simply continuing to possess it." *In re Young*, 193 B.R. at 624.

This interpretation is at odds with the plain meaning of "exercising control." Webster's Dictionary defines "control" as, among other things, "to exercise restraining or directing influence over" or "to have power over." Merriam-Webster's Collegiate Dictionary (11th Ed. 2003). Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the common-sense meaning of the word.

Moreover, to hold that "exercising control" over an asset encompasses only selling or otherwise destroying the asset would not be logical given the central purpose of reorganization bankruptcy. The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together in his estate such that he may rehabilitate his credit and pay off his debts; this necessarily extends to all property, even property lawfully seized pre-

petition. *See Whiting Pools, Inc.*, 462 U.S. at 203-04; *see also In re Yates*, 332 B.R. 1, 5 (BAP 10th Cir. 2005) ("As a practical matter, there is little difference between a creditor who obtains property of the estate before bankruptcy is filed, or after bankruptcy is filed. The ultimate result is the same—the estate will be deprived of possession of that property. This is precisely the result § 362 seeks to avoid."). An asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot.

Further, Congress's decision to amend section 362 evinces its intent to expand the prohibited conduct beyond mere possession. Prior to 1984, the Code's stay provision only prohibited any act to obtain possession of property belonging to a bankruptcy estate. Subsequently, Congress amended section 362(a)(3) when it passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 to include as prohibited conduct "exercising control" over any asset belonging to the bankruptcy estate. Pub.L. No. 98-353, 1984 U.S.C.C.A.N. (98 Stat.) 371. Although Congress did not provide an explanation of that amendment, *In re Young*, 193 B.R. at 623, the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset suggests that it intended to include conduct by creditors who seized an asset pre-petition. *See In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996); *In re Javens*, 107 F.3d 359, 368 (6th Cir. 1997). In fact, one court has gone as far as saying that "[w]ithholding possession of property from a bankruptcy estate is the essence of 'exercising

control' over possession" because it prevents the debtor from achieving beneficial use of the estate's property. *In re Sharon*, 234 B.R. 676, 682 (BAP 6th Cir. 1999).

For these reasons, we find that the act of passively holding onto an asset constitutes "exercising control" over it, and such action violates section 362(a)(3) of the Bankruptcy Code. *Accord In re Yates*, 332 B.R. at 5; *In re Sharon,* 234 B.R. at 682; *In re Abrams*, 127 B.R. 239, 241-43 (BAP 9th Cir. 1991); *In re Knaus*, 889 F.2d 773 (8th Cir. 1989). Here, GMAC exercised control over Thompson's vehicle when it refused to return it to the bankruptcy estate upon request.

### C.    The Issue of "Adequate Protection" Does Not Stay a Creditor's Obligation to Return the Seized Asset to the Bankruptcy Estate

There is no debate that a debtor must provide a secured creditor with adequate protection of its interests in the seized asset if the creditor requests such protection. Under 11 U.S.C. § 363(e), "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of" the creditor's interest. The issue in controversy is: whether (1) the creditor must return the asset to the bankruptcy estate and then seek adequate protection in court; or, whether (2) the creditor may retain possession of the asset placing the onus on the debtor to bring an

action for turnover before the bankruptcy court in a separately filed adversary proceeding.[2]

The majority of district courts in Illinois, as well as several district courts in other jurisdictions, have followed the precedent set forth in *In re Nash*, 228 B.R. 669 (Bankr. N.D. Ill. 1999) and *In re Spears*, 223 B.R. 159 (Bankr. N.D. Ill. 1998), which hold that a creditor need not return seized property to a debtor's estate absent adequate protection of its interests. These decisions reason that requiring immediate turnover would force the creditor into an untenable position—having to turn over an asset in which the creditor has an interest without being adequately assured that its value will be retained. They further reason that since the purpose of the Bankruptcy Code's stay provision is to maintain the status quo, the car should be kept by the party that had possession immediately prior to the filing of the bankruptcy petition.

Although our circuit has not ruled on this issue, several circuits have held that the creditor must first return the asset to the bankruptcy estate and then move to have its interests adequately protected. *See In re Yates*, 332 B.R. at 7; *In re Sharon*, 234 B.R. at 685; *In re Abrams*, 127 B.R. at 246; *In re Knaus*, 889 at 778.

A plain reading of 11 U.S.C. § 363(e) and 542(a), the Supreme Court's decision in *Whiting Pools*, 462 U.S. 198, and a myriad of policy considerations, support our sister circuits' view. At oral argument, GMAC argued that all

---

[2]  *See* Fed. R. Bankr. P. 7001.

a creditor must do to comply with the stay provision is place the adequate protection issue before the bankruptcy court. GMAC is correct that it has the burden of requesting adequate protection for its interest either directly under 11 U.S.C. § 363(e) or by moving for relief from the stay under 11 U.S.C. § 362(d)(1).[3] *See In re Yates*, 332 B.R. at 6; *In re Sharon*, 234 B.R. at 683-84. However, if a creditor is allowed to retain possession, then this burden is rendered meaningless—a creditor has no incentive to seek protection of an asset of which it already has possession. Thus, in order for the language of 11 U.S.C. § 363(e) to have meaning, Congress must have intended for the asset to be returned to the bankruptcy estate before the creditor seeks protection of its interest.

A reading of 11 U.S.C. § 542(a) also indicates that turnover of a seized asset is compulsory. This provision states that a creditor in possession of an asset belonging to the bankruptcy estate "*shall deliver* to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a) (emphasis added). The majority of appellate courts have found that section 542(a) works with the stay provision in section 362(a) "to draw back into the estate a right of possession that is claimed

_____

[3] This provision reads: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause, including the lack of adequate protection of an interest in property of such party in interest."

by a lien creditor pursuant to a pre-petition seizure; the
Code then substitutes 'adequate protection' for possession
as one of the lien creditor's rights in the bankruptcy
case*." In re Sharon*, 234 B.R. at 683. The right of possession
is incident to the automatic stay. A subjectively perceived
lack of adequate protection is not an exception to the
stay provision and does not defeat this right. *Id.* at 684.
Instead, section 362(d) "works in tandem with § 542(a) to
provide creditors with what amounts to an affirmative
defense to the automatic stay." *In re Yates*, 332 B.R. at 5.
First, the creditor must return the asset to the bankruptcy
estate. Then, if the debtor fails to show that he can ade-
quately protect the creditor's interest, the bankruptcy
court is empowered to condition the right of the estate
to keep possession of the asset on the provision of certain
specified adequate protections to the creditor.[4] *See id.; see
also In re Colortran,* 210 B.R. 823, 827-28 (BAP 9th Cir.
1997) ("A creditor who requires possession in order to
achieve or maintain perfection has the right to file a motion
for relief from the stay and request adequate protection
such that its lien rights are preserved. However, the
creditor must tender the goods or face sanctions for
violation of the stay. The creditor has a right to and may
request terms of adequate protection while simultaneously
returning the goods. However, while the creditor may
suggest terms of adequate protection, it may not unilater-
ally condition the return of the property on its own deter-

---

[4] A creditor may also argue that the debtor has a total lack of
equity in the asset, in which case the court can order the
immediate return of the asset to the creditor.

mination of adequate protection."), rev'd on other grounds, 165 F.3d 35 (9th Cir. 1998).

The Supreme Court, in *Whiting Pools*, 462 U.S. 198, 204, adopted this interpretation of section 542(a) in the context of a Chapter 11 corporate reorganization bankruptcy. In *Whiting Pools*, a debtor corporation asked the Court to determine whether the I.R.S., which had seized some of the debtor's assets prior to its bankruptcy filing, was subject to the stay provisions of section 362(a). *Id*. at 200. The Supreme Court unanimously held that the I.R.S. is subject to these provisions. *Id*. at 209.

The Court further held, after analyzing the relevant legislative history, that section 542(a) "requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." *Id*. at 205. The Court stated that when a creditor seizes property before a debtor files for Chapter 11, the creditor's "lien does not dissolve nor is its status as a secured creditor destroyed." *Id.* A creditor is entitled to adequate protection for its interests, but it is required to seek protection of these interests according to congressionally established bankruptcy procedures rather than by withholding seized property from a debtor's efforts to reorganize. *Id*. A creditor must look to section 363(e) for protection "rather than to the nonbankruptcy remedy of possession." *Id*. at 204.

GMAC's only argument against *Whiting Pools*'s direct applicability to this case is that, in a footnote, the Court commented that it was not expressing an opinion as to how section 542(a) functioned in Chapter 7 or 13 pro-

ceedings. *Id*. at 208 n.17 ("Section 542(a) also governs turnovers in liquidation and individual adjustment of debt proceedings under Chapters 7 and 13 of the Bankruptcy Code. Our analysis in this case depends in part on the reorganization context in which the turnover order is sought. We express no view on the issue whether § 542(a) has the same broad effect in liquidation or adjustment of debt proceedings.") (citations omitted). Our sister circuits have resoundly rejected GMAC's argument and found that *Whiting Pools*'s analysis applies equally to Chapter 13 cases. *See, e.g., In re Yates*, 332 B.R. at 6-7 ("Although the Court specifically narrowed the holding of *Whiting Pools* to govern only Chapter 11 cases, we see no reason why it should not apply with equal force to proceedings under another rehabilitation chapter, Chapter 13."). We agree. The principle behind Chapter 11 and Chapter 13 is the same—allow the debtor to reorganize and repay the majority of his debts without having to liquidate his assets. The need to retain the beneficial use of productive assets to effectuate this purpose is the same in each case. GMAC fails to proffer any reason why section 542(a) does or should function differently under Chapter 13 than it does under Chapter 11.

The contrary view, most vociferously expressed in *In re Young*, focuses on the decades old pre-Bankruptcy Code procedure, which the *Young* court said required that a debtor obtain "an order of the court and [ ] some proof of adequate protection by the debtor or trustee before" the bankruptcy court would order a creditor to return an asset seized pre-petition to a debtor's bankruptcy estate. 193 B.R. at 626. The bankruptcy court in *Young* reasoned

that that the language of *Whiting Pools* indicates that the Supreme Court did not intend to abrogate this pre-Code practice, but rather wanted to maintain the purported status quo of requiring a debtor to provide proof of adequate protection before the asset would be returned to his estate. *Id*.

The *Young* court's analysis is not persuasive. There is no evidence that it was uniform pre-Code procedure to require a debtor to offer adequate protection prior to a court ordering the asset's turnover. The *Young* court read into the procedural history of *Reconstruction Finance Corporation v. Kaplan*, 185 F.2d 791, 795 (1st Cir. 1950), and inferred that the pre-Code procedure required that a debtor show adequate protection before a bankruptcy court would mandate the return of a seized asset. A fair reading of *Kaplan* (and the one employed by the Supreme Court in *Whiting Pools*) indicates that it stands only for the proposition that prior to the advent of the Bankruptcy Code, bankruptcy courts "could order the turnover of collateral in the hands of a secured creditor." *Whiting Pools*, 462 U.S. at 208. *Kaplan* does not reach the adequate protection question. In any event, "at a minimum, it appears that bankruptcy courts approved of differing practices concerning adequate protection when *Whiting Pools* was decided" and, since then, "the majority of courts have interpreted § 362(a)(3) to mean that any postpetition retention of a debtor's property violates the automatic stay and is sanctionable." *In re Sharon*, 200 B.R. 181, 190-91 (6th Cir. 1996).

It is also undisputed that *Whiting Pools* did not explicitly address the question of whether the creditor

must turn over the seized asset prior to the determination of the adequate protection question. However, there is language in *Whiting Pools* that the *Young* court overlooked which tends to indicate that the Supreme Court favored an approach whereby the creditor would first turn over the seized asset and then petition the bankruptcy court for adequate protection. The Court commented that the Bankruptcy Code "*requires* an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." *Whiting Pools*, 462 U.S. at 205 (emphasis added). It further stated that turnover is not explicitly required in only three specific situations, lack of adequate protection not being among them. *Id.* at 206 n.12 ("Section 542 provides that the property be usable under § 363, and that turnover is not required in three situations: when the property is of inconsequential value or benefit to the estate, § 542(a), when the holder of the property has transferred it in good faith without knowledge of the petition, § 542(c), or when the transfer of the property is automatic to pay a life insurance premium, § 542(d)."). Further, the Court intimated that the onus is on the creditor, rather that the debtor, to seek relief in the bankruptcy court when it stated: "*At the secured creditor's insistence*, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor." *Id.* at 204 (emphasis added). This language, combined with our analysis of sections 362(a)(3) (which was not amended at the time of the *Whiting Pools* decision) and 542, shows that it is unlikely that Congress, in creating

the Bankruptcy Code, intended to affirm any pre-petition convention that might have existed that allowed a creditor to retain possession of an asset properly belonging to a debtor's bankruptcy estate while awaiting an adequate protection determination. *See In re Sharon*, 200 B.R. at 190-91 ("The 1983 *Whiting Pools* decision obviously preceded the 1984 Amendments and therefore could not, and does not, contain an analysis of the 'exercise control' language added to § 362(a)(3). Similarly, *Whiting Pools* could not have considered the 1987 addition of paragraph (d) to Bankruptcy Rule 4001.").

Finally, noteworthy additional considerations also militate in favor of placing the onus on the creditor, rather than on the debtor, to seek judicial relief if it believes that its interests are not adequately protected. First, the purpose of reorganization bankruptcy, be it corporate or personal, is to allow the debtor to regain his financial foothold and repay his creditors. *See Matter of Aberegg*, 961 F.2d 1307, 1309-10 (7th Cir. 1992) ("[T]he basic legislative purpose underlying Chapter 13 [ ] is to provide debtors with a flexible means for repaying creditors."). That is why a stay is imposed. It allows a debtor free use of his assets while the court works with both debtor and creditors to establish a rehabilitation and repayment plan. In theory, these assets will generate money that could contribute to paying down the debtor's obligations. If a debtor's car remains in the hands of a creditor, it could hamper the debtor from either attending or finding work, which is crucial for garnering the funds necessary to pay off his debts.

Second, allowing the creditor to maintain possession of the asset until it subjectively feels that adequate protection is in place, or until the debtor moves for the asset's return, unfairly tips the bargaining power in favor of the creditor. By negotiating a better security package for itself, the creditor can essentially remove the equitable powers of the bankruptcy court and place itself in a position above other secured creditors. *See In re Knaus*, 889 F.2d at 775 ("[I]f persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced. The general creditors, for whose benefit the return of property is sought, would have to needlessly bear the cost of its return. And those who unjustly retain possession of such property might do so with impunity."). The common view is that "a Chapter 13 debtor's right to possession and use of her car [should] not [be] dependent on the subjective judgment of a creditor." *In re Sharon*, 234 B.R. at 685. The bankruptcy court should have "the prerogative to make judgments whether a particular car should continue to be used by a Chapter 13 debtor . . . and whether an offer of adequate protection is sufficient to [allow] continue[d] possession and use by the debtor." *Id*.

Third, requiring the debtor, rather than the creditor, to bear the costs of seeking court relief hurts not only the debtor but all of the debtor's other creditors by virtue of decreasing the value of the bankruptcy estate. It

makes far more sense for all creditors to move before the court in a consolidated proceeding to have their assets adequately protected than for the debtor to file a myriad of motions in an attempt to recover his dispersed assets. *See In re Abrams,* 127 B.R. at 243 ("[T]he case law and the legislative history of § 362 indicate that Congress did not intend to place the burden on the bankruptcy estate to absorb the expense of potentially multiple turnover actions, at least not without providing a means to recover damages sustained as a consequence thereof.").

GMAC counters with a policy consideration of its own. It claims that during the time period after it transfers the asset back to the debtor but before the court hears a motion for adequate protection, the asset may lose substantially all its value (through depreciation or destruction). Although this is theoretically possible, the Bankruptcy Code already has a procedure in place to combat such a problem—the emergency motion. Fed. R. Bankr. P. 4001(a)(2); *see also In re Colortran*, 210 at 827-28 ("If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard it may request an emergency hearing under § 362(f).").

All in all, the Supreme Court's reasoning in *Whiting Pools*, a fair reading of the plain language of the relevant Bankruptcy Code provisions, and the other considerations mentioned require us to find that upon the request of a debtor that has filed for of bankruptcy, a creditor must first return an asset in which the debtor has an

interest to his bankruptcy estate and then, if necessary, seek adequate protection of its interests in the bankruptcy court. As such, we reverse the decision of the bankruptcy court.

In order for a bankruptcy court to award sanctions pursuant to 11 U.S.C. § 362(k), the court must find that a creditor *willfully* violated the automatic stay. GMAC correctly notes that the parties did not fully brief or argue this issue below, nor did the court decide it. Thus, we remand this matter to the bankruptcy court to determine if GMAC's actions in violation of the stay were willful.

### III.  CONCLUSION

The judgment of the bankruptcy court is REVERSED. We REMAND the case for further proceedings consistent with this opinion.