# United States Court of Appeals
## For the First Circuit

No. 17-1241

LEX CLAIMS, LLC ET AL.,

Plaintiffs, Appellees,

v.

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,

Intervenor, Appellant,

ALEJANDRO GARCÍA-PADILLA ET AL.,

Defendants.

No. 17-1248

LEX CLAIMS, LLC ET AL.,

Plaintiffs, Appellees,

v.

JOSE F. RODRIGUEZ ET AL.,

Intervenors, Appellants,

ALEJANDRO GARCÍA-PADILLA ET AL.,

Defendants.

No. 17-1272

LEX CLAIMS, LLC ET AL.,

Plaintiffs, Appellees,

v.

AMBAC ASSURANCE CORPORATION,

Defendant, Appellant,

ALEJANDRO GARCÍA-PADILLA ET AL.,

Defendants.

———————————

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

———————————

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

———————————

Michael Luskin, with whom Stephan Hornung and Luskin, Stern & Eisler LLP were on brief, for appellant Financial Oversight and Management Board.

Susheel Kirpalani, with whom David Cooper, Daniel Salinas-Serrano, Darren M. Goldman, Daniel P. Mach, Quinn Emanuel Urquhart & Sullivan LLP, Rafael Escalera, Sylvia M. Arizmendi, Carlos R. Rivera-Ortiz, and Reichard & Escalera were on brief, for appellants Jose F. Rodriguez, Decagon Holdings 2, LLC, Decagon Holdings 1, LLC, Decagon Holdings 3, LLC, Decagon Holdings 4, LLC, Decagon Holdings 5, LLC, Decagon Holdings 6, LLC, Decagon Holdings 7, LLC, Decagon Holdings 8, LLC, Decagon Holdings 9, LLC, Decagon Holdings 10, LLC, Golden Tree Asset Management LP, Merced Capital, LP, Old Bellows Partners LLP, Scoggin Management LLP, Taconic Master Fund 1.5 LP, Taconic Opportunity Master Fund LP, Tilden Park Capital Management LP, Whitebox Advisors LLC, Varde Credit Partners Master, LP, Varde Investment Partners, LP, Varde Investment

Partners Offshore Master, LP, and Varde Skyway Master Fund, LP.

Dennis F. Dunne, with whom Andrew M. Leblanc, Atara Miller, Grant R. Mainland, Milbank, Tweed, Hadley & McCloy, LLP, Roberto A. Cámara-Fuertes, and Ferraiuoli LLC were on brief, for appellant Ambac Assurance Corporation.

Mark T. Stancil, with whom Ariel N. Lavinbuk, Donald Burke, and Robbins, Russell, Englert, Orseck, Untereiner & Sauber LLP were on brief, for appellees.

April 4, 2017

**PER CURIAM.** This is our second set of appeals involving the automatic stay provision of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), see 48 U.S.C. §§ 2101-2241, which employs language very similar to that of the bankruptcy stay statute. For additional background, we refer the reader to our prior opinion in Peaje Investments LLC v. García-Padilla, 845 F.3d 505 (1st Cir. 2017). Here, the parties dispute whether four claims included in the plaintiffs' Second Amended Complaint (namely, the first, second, third, and twelfth causes of action) are within the scope of PROMESA's temporary stay (set to expire on May 1, 2017). See 48 U.S.C. § 2194(a)-(b).

In district court, the plaintiffs, holders of general obligation ("GO") bonds issued by the Commonwealth of Puerto Rico, conceded that the majority of their claims were subject to the stay. The court, however, allowed the suit to proceed on the four specific counts now at issue, all of which are purportedly brought under various provisions of PROMESA. Appellants Financial Oversight and Management Board, Jose F. Rodriguez et al. (the "Senior COFINA bondholders"), and Ambac Assurance Corporation (together, the "Appellants") challenge this ruling on appeal. We have jurisdiction under 28 U.S.C. § 1291. See In re Atlas Exp. Corp., 761 F.3d 177, 182 (1st Cir. 2014).

On March 20, 2017, we stayed the district court action pending further notice. We found it unnecessary to consider

- 4 -

whether the PROMESA stay should be applied to the entire "action or proceeding," as the Appellants argue, or claim-by-claim, as the district court ruled. Noting the unitary nature of the plaintiffs' claims and the relief sought during the PROMESA stay period, we saw a substantial likelihood that the entire action should have been stayed. Full briefing and oral argument followed. After expedited consideration, and applying de novo review, see Parkview Adventist Med. Ctr. v. United States, 842 F.3d 757, 762 (1st Cir. 2016), we now hew to the same outcome and reverse the decision of the district court insofar as it denied a stay of the first, second, third, and twelfth counts of the Second Amended Complaint. We write briefly in explanation.

The Commonwealth[1] has various creditors, of which the two dominant groups by debt load are the GO bondholders and the Puerto Rico Sales Tax Financing Corporation ("COFINA") bondholders.[2] We can safely assume that the Oversight Board's PROMESA negotiations, now entering their critical stage in the final month of the PROMESA stay, must find a way to accommodate and balance the respective interests of these bondholders if there is to be a consensual resolution.

---

[1] The term as used here includes instrumentalities of the Commonwealth such as COFINA. See 48 U.S.C. § 2104(11).

[2] See Fiscal Plan for Puerto Rico 26 (Mar. 13, 2017), https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/58c71815e9d43.pdf.

When Congress enacted PROMESA and its "immediate--but temporary--stay" of litigation, 48 U.S.C. § 2194(m)(5), it could hardly have envisaged that, during the stay period, one of these groups of bondholders could seek and potentially obtain injunctive relief that would dispossess the other by driving its bonds into default. And yet, that is what the GO bondholders evidently intend to do. The "Relief That Plaintiffs Seek At This Time" (meaning during the stay period) is sweeping. Beyond certain declarations as to the legality of the Commonwealth's post-PROMESA measures and the constitutional priority of the GO bonds "over all other expenditures, including payments to COFINA and COFINA bondholders," the plaintiffs also seek to:

> --"[e]njoi[n] enforcement or implementation of the unlawful Executive Order and the Moratorium Act" as applied to the Constitutional Debt;

> --"prohibi[t] the diversion of revenues arising from collection of the SUT [sales and use tax] (or any substitute revenues) to COFINA and requir[e] the Commonwealth Officer Defendants . . . and the COFINA Defendants to direct such funds to Puerto Rico's Treasury";

> --"direc[t] the COFINA Defendants to transfer any revenues received from the collection of the Commonwealth's SUT in their possession or held on behalf of COFINA to the Commonwealth";

> --"direc[t] the Commonwealth Officer Defendants to segregate and preserve such funds arising from collection of the SUT or

transferred from the COFINA Defendants"; and

--"requir[e] the Commonwealth Officer Defendants, in their official capacities as Commonwealth officers, to segregate and preserve all funds clawed back, to be clawed back, or available to be clawed back under contractual and legal provisions expressly acknowledging that those funds are subject to turnover for purposes of paying the Constitutional Debt."[3]

In toto, the relief that the plaintiffs seek during the stay period would, at a minimum, force the Commonwealth to set aside SUT revenues and "clawed back" (or available to be clawed back) funds; indeed, if taken at face value, "enjoining" the enforcement of the Executive Order and the Moratorium Act, which together resulted in the Commonwealth's default on the Constitutional Debt, might mean that the Commonwealth must stop defaulting on the GO bonds and pay those bondholders now. The flip side is, of course, that the Commonwealth might default on all COFINA bonds, which would be starved of SUT revenues as well as any alternative funding.[4] An "act" of litigation that leads

---

[3] It is telling that the GO bondholders omit to itemize the relief they seek now anywhere in their brief, instead describing it in the most general terms as "negative injunctive relief that would prevent the Commonwealth from continuing to dissipate assets in violation of PROMESA," and as compelling Puerto Rico "only to 'move' funds within its government and 'retain' those funds."

[4] COFINA bonds are "non-recourse" bonds, leaving holders with no security beyond the SUT revenue stream. See P.R. Laws Ann. tit. 13, § 13(d).

the Commonwealth to default on such a large tranche of its debt, while preserving the corresponding funds for a rival class of bonds, exercises "control" over the Commonwealth's property in any reasonable sense of that term. See 48 U.S.C. § 2194(b)(3) (staying, among other things, "any act . . . to exercise control over property of the Government of Puerto Rico"). To rule otherwise, as the district court did, was an error of law. We know of no analogous bankruptcy case declining to automatically stay debt litigation involving relief comparable to that requested here.

The plaintiffs counter that they are not seeking "constructive possession" of Commonwealth property. But § 2194(b)(3) encompasses more than possession and constructive possession. In the analogous subsection of the bankruptcy stay statute, courts have defined "control" quite broadly. See Thompson v. Gen. Motors Acceptance Corp., 566 F.3d 699, 702 (7th Cir. 2009) (defining "control" to include the exercise of "restraining or directing influence over" property (quoting Merriam-Webster's Collegiate Dictionary (11th ed. 2003))). Such a broad definition is also consistent with legislative history. Prior to 1984, the bankruptcy "stay provision only prohibited any act to obtain possession of property belonging to a bankruptcy estate." Id. Congress amended the statute to also prohibit "conduct 'exercising control'" over such property. Id. PROMESA incorporated this

- 8 -

amended language. "Although Congress did not provide an explanation of that amendment, the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset suggests" that the current stay provision must not be so limited as the plaintiffs contend. Id. (citation omitted). The lone case cited by the plaintiffs on this issue merely stands for the proposition that the relevant subsection of the bankruptcy stay statute includes acts of constructive possession. See In re Weidenbenner, 521 B.R. 74, 79 (Bankr. S.D.N.Y. 2014). The court did not purport to hold that constructive possession is required to trigger the stay.

From this expansive understanding of "control," it follows that the stay applies to litigation seeking declaratory and injunctive relief at least where, as here, the express purpose of the lawsuit is to preclude the Commonwealth from using its own funds as it sees fit. Indeed, in the Chapter 9 context, district courts have often found declaratory and injunctive actions against the municipality to violate the bankruptcy stay statute. See In re City of San Bernardino, 558 B.R. 321, 329 (C.D. Cal. 2016); In re City of San Bernardino, 530 B.R. 489, 499 (C.D. Cal. 2015); In re City of Detroit, 504 B.R. 97, 166-67 (Bankr. E.D. Mich. 2013); In re Jefferson Cty., 484 B.R. 427, 446-47 (Bankr. N.D. Ala. 2012). While we do not imply that all such litigation constitutes an exercise of "control," or endorse the specific holdings of the

cases cited above, the claims at issue here plainly constitute attempts to exercise control over Commonwealth revenues.

The plaintiffs also cite authorities for the unremarkable proposition that the relevant subsection of the bankruptcy stay provision does not necessarily preclude "post-petition suits to enjoin unlawful conduct." But the only such unlawful conduct alleged here is the Commonwealth's allocation of its own revenues to pay certain creditors as opposed to others. As explained above, the plaintiffs' attempt to alter that resource-allocation decision through litigation falls comfortably within PROMESA's stay of acts to exercise control over Commonwealth property. The cases relied on by the plaintiffs are readily distinguishable. See, e.g., Dominic's Rest. of Dayton, Inc. v. Mantia, 683 F.3d 757, 761 (6th Cir. 2012) (holding that bankruptcy stay did not apply to contempt proceedings stemming from debtor's alleged trademark infringement).

Because the relief that the plaintiffs seek at this time is stayed by § 2194(b)(3),[5] regardless of when the underlying claims arose, it is unnecessary to consider whether pleading artifice alone has converted what would otherwise have been pre-PROMESA local-law claims into PROMESA-based federal claims. We

---

[5] We reject the plaintiffs' invitation, mentioned for the first time at oral argument, to allow a freestanding claim for declaratory relief to go forward. See Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir. 1990).

- 10 -

similarly need not decide whether the plaintiffs' claims also fall within any other subsection of the PROMESA stay provision, or whether the district court should have exercised its inherent authority to issue a discretionary stay.

The district court's holding that the PROMESA stay did not apply to the plaintiffs' first, second, third, and twelfth causes of action is **REVERSED**, and the matter is remanded for proceedings consistent with this opinion. The court's denial of the Senior COFINA bondholders' motion to intervene solely for the purposes of addressing the stay issue is therefore moot.[6] See Peaje, 845 F.3d at 515 n.6. The mandate shall issue forthwith, and the parties shall bear their own costs.

---

[6] The district court subsequently permitted the Senior COFINA bondholders to intervene in the case more generally.