12-1632-bk
Weber v. SEFCU

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: December 4, 2012      Decided: May 8, 2013)

Docket No. 12-1632-bk

IN RE: CHRISTOPHER WEBER,

*Debtor.*

CHRISTOPHER WEBER,

*Plaintiff-Appellee,*

–v.–

SEFCU,

*Defendant-Appellant,*

ANDREA E. CELLI, CHAPTER 13 TRUSTEE,

*Trustee.*

B e f o r e:

CABRANES, RAGGI, and CARNEY, *Circuit Judges.*

Appeal from a final judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*) finding that defendant-appellant SEFCU violated the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362, and remanding to the Bankruptcy Court (Littlefield, *J.*) for a determination regarding sanctions. SEFCU, which held a loan secured in part by a vehicle owned by plaintiff-appellee Christopher Weber, repossessed the vehicle pursuant to the loan agreement shortly before Weber filed a petition seeking relief under Chapter 13 of

the Bankruptcy Code. Although it received notice of the petition, SEFCU refused – absent entry of a court order and provision of protection that it deemed adequate – to return Weber's vehicle to him as debtor-in-possession. Weber retained at least an equitable interest in the vehicle under New York law. Thus, under United States v. Whiting Pools, Inc., 462 U.S. 198 (1983), the filing of Weber's bankruptcy petition transformed the equitable interest into a possessory interest held by Weber's estate. We conclude that SEFCU "exercised control" over "property" of Weber's bankruptcy estate in contravention of section 362 when it failed to relinquish the vehicle promptly after it learned that a Chapter 13 petition was filed. Consequently, under section 362(k), SEFCU is liable for Weber's actual damages resulting from the wrongful retention, costs, and attorneys' fees. The judgment of the district court is AFFIRMED.

———————

GARY A. LEFKOWITZ (William B. Schiller, *on the brief*), Schiller & Knapp, LLP, Latham, New York, *for Defendant-Appellant.*

RICHARD CROAK, Albany, New York, *for Plaintiff-Appellee.*

Tara Twomey (Ray DiGuiseppe, *on the brief*), National Consumer Bankruptcy Rights Center, San Jose, California, *for amicus curiae* National Association of Consumer Bankruptcy Attorneys, *in support of Plaintiff-Appellee.*

———————

SUSAN L. CARNEY, *Circuit Judge*:

Defendant SEFCU, a lender, appeals from a judgment of the United States District Court for the Northern District of New York (Suddaby, *J.*) reversing an order of the United States Bankruptcy Court for the Northern District of New York (Littlefield, *J.*) and remanding the case to the Bankruptcy Court for further proceedings. The District Court concluded that SEFCU violated the automatic stay provision of the Bankruptcy Code, 11 U.S.C. § 362, when, after lawfully

2

repossessing a vehicle belonging to the debtor, plaintiff Christopher Weber, it failed to deliver the vehicle to him notwithstanding its knowledge of the debtor's pending petition under Chapter 13 of the Bankruptcy Code.  The District Court affirmed, holding that, by declining to surrender the vehicle absent a turnover order and protection SEFCU considered adequate, the lender wrongfully "exercised control" over the vehicle in contravention of section 362 and was liable for Weber's related damages, attorneys' fees, and costs.

On appeal to our Court, SEFCU challenges the District Court's interpretation of section 362 and other relevant provisions of the Bankruptcy Code, and argues that, under the authority of Manufacturers & Traders Trust Co. v. Alberto (In re Alberto), 271 B.R. 223 (N.D.N.Y. 2001), it was entitled to retain the vehicle notwithstanding the pending bankruptcy proceedings.  For the reasons set forth below, we AFFIRM the judgment of the District Court and REMAND the cause to the district court for a determination of the amount of damages, costs, and attorneys' fees that SEFCU owes Weber under section 362(k), and any other proceedings consistent with this opinion.

## BACKGROUND

The relevant facts are undisputed.[1]

---

[1] In proceedings before the Bankruptcy Court, the parties submitted a "Combined statement of facts not subject to material dispute," pursuant to Local Rule 7056 of the Bankruptcy Court for the Northern District of New York.  We draw the facts presented here from that statement.

In August 2006, Weber and SEFCU (identified in Bankruptcy Court pleadings as the "State Employees Federal Credit Union")[2] entered into a loan agreement pursuant to which SEFCU obtained a security interest in Weber's vehicle, a pickup truck. The loan agreement entitled SEFCU to repossess Weber's vehicle upon default.

In 2009, SEFCU became entitled to proceed against Weber. As a result, on January 10, 2010, SEFCU took possession of Weber's vehicle pursuant to the loan agreement, and, by notices dated January 10 and 11, 2010, advised him of his right under New York law to redeem the vehicle upon payment of amounts due and certain costs. Four days after the seizure, on January 14, Weber filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 109(e), 1301-08, 1321-30, in the United States Bankruptcy Court for the Northern District of New York. Weber's attorney concurrently gave SEFCU written notice of Weber's bankruptcy filing, and, invoking the stay imposed by Bankruptcy Code section 362, 11 U.S.C. § 362(a), requested the vehicle's return.

One week later, SEFCU still had the vehicle, and accordingly, on January 22, Weber filed an adversary proceeding against SEFCU seeking its return so that, as later explained by his counsel to the Bankruptcy Court, he could "continue his construction business" during the pendency of his petition. On March 1, with the vehicle still in SEFCU's possession, the Bankruptcy Court entered an

---

[2] According to The Daily Gazette, which covers Schenectady and Albany, the State Employees Federal Credit Union officially changed its name to "SEFCU" in 1990. Lee Coleman, *Credit Unions Going Strong in Region*, The Daily Gazette, Apr. 29, 2012, at B1.

order requiring SEFCU to show cause why it should not return the vehicle and why the court should not grant Weber an award of damages for SEFCU's violation of section 362 and for other relief. On March 4, the court heard argument on the order to show cause, and, although the record does not reflect entry of a related order at that time, SEFCU is reported to have returned the vehicle to Weber the following day.

The proceedings in the Bankruptcy Court continued, as Weber sought damages for his inability to use the vehicle between January 14 and March 5, attorneys' fees, and sanctions. In November 2010, SEFCU moved for summary judgment, putting to the Bankruptcy Court the question of law whether SEFCU's failure to release the vehicle promptly after the petition was filed constituted a "willful" violation of the automatic stay under subsections (a) and (k)(1) of section 362 (providing for recovery of damages, costs, and attorneys' fees for "any willful violation of a stay"). SEFCU maintained that there was no violation, and that an earlier district court decision in other proceedings, Alberto, 271 B.R. 223 (N.D.N.Y. 2001), gave it a reasonable basis for declining to release the vehicle absent a court order issued pursuant to Bankruptcy Code section 542, 11 U.S.C. § 542 (relating to "Turnover of property to the estate"). Weber, for his part, argued that Alberto was wrongly decided, and that section 362 required SEFCU to release the vehicle promptly after the petition was filed. The Bankruptcy Court, in a brief Order, granted summary judgment for SEFCU.

5

Weber appealed to the District Court. Relying primarily on the Supreme Court's decision in United States v. Whiting Pools, Inc., 462 U.S. 198 (1983), and rejecting the reasoning of the Alberto court, the district court concluded that SEFCU was bound to release the vehicle to Weber, the debtor-in-possession, upon learning of Weber's pending Chapter 13 proceedings. The district court further determined that, having failed to do so, SEFCU violated section 362. Because it knew of the petition and retained the vehicle, SEFCU's violation was willful, making it liable for damages and attorneys' fees. Weber v. SEFCU, 477 B.R. 308, 311 (N.D.N.Y. 2012). SEFCU timely appealed.

## DISCUSSION

We conduct a "plenary review" of a decision of "a district court functioning in its capacity as an appellate court in a bankruptcy case." Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 301 (2d Cir. 1997). Thus, we review *de novo* the bankruptcy court's legal conclusions. Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.), 68 F.3d 26, 29 (2d Cir. 1995). As noted above, the relevant facts are not contested; we have no occasion to subject them to further review.

Under Bankruptcy Code section 541, governing "Property of the estate," the act of filing a petition for bankruptcy creates an estate comprised of (as relevant here) "all legal or equitable interests of the debtor in property as of the

6

commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1). Section 541

gathers into the estate all such interests in property, "wherever located and by

whomever held." Id. § 541(a).

To assemble the bankruptcy estate, section 542 of the Code requires

that, during bankruptcy proceedings, an entity "in possession, custody, or control" of

certain property in the estate "*shall deliver*" that property to the trustee, "unless

such property is of inconsequential value or benefit to the estate." 11 U.S.C.

§ 542(a) (emphasis added). The property subject to this delivery obligation is

"property that the trustee may use, sell, or lease under section 363," which grants

broad powers over the estate's property to the trustee.[3] Id. In a Chapter 13

bankruptcy, the debtor "remain[s] in possession of all property of the estate"– acting

in effect as trustee under section 542(a) – unless the debtor's reorganization plan

provides otherwise. 11 U.S.C. § 1306(b).[4] The delivery obligation of section 542(a)

---

[3] Section 363, as applicable here, provides: "[U]nless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1); see also United States v. Whiting Pools, Inc., 674 F.2d 144, 149 (2d Cir. 1982) (Friendly, *J.*), aff'd, 462 U.S. 198 (1983). The trustee may also use, sell, or lease property of the estate outside the ordinary course of business, upon notice and a hearing before the bankruptcy court. 11 U.S.C. § 363(b)(1); see also Motorola, Inc. v. Official Comm. of Unsecured Creditors and JPMorgan Chase Bank, N.A. (In re Iridium Operating LLC), 478 F.3d 452, 466 (2d Cir. 2007).

[4] The debtor-in-possession may exercise many of the rights and powers of a bankruptcy trustee, including the right to use, sell, or lease property of the estate. 11 U.S.C. §§ 1303, 1304(b) ("Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court prescribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.").

7

thus contemplates the debtor-in-possession as the recipient of the property of the estate.

While bankruptcy proceedings are pending, the automatic stay provisions of section 362 work with sections 541 and 542 to shelter the debtor's estate from action by creditors, enabling the debtor to get the relief and fresh start that are among the goals of the bankruptcy regime.[5]  Thus, under section 362, filing a bankruptcy petition automatically effects a stay of "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Those who violate section 362 are liable for related damages and costs: under section 362(k), a debtor "injured by any willful violation of a stay provided by [section 362] *shall recover* actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  Id. § 362(k)(1) (emphasis added).

We first consider whether SEFCU's refusal to return the vehicle to Weber promptly upon learning of his Chapter 13 bankruptcy filing constituted an

---

[5] The iconic description of the overriding purpose of section 362 is drawn directly from the section's legislative history:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors.  It stops all collection efforts, all harassment, and all foreclosure actions.  It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 340-41 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97; see also United States v. Colasuonno, 697 F.3d 164, 172 (2d Cir. 2012).

unlawful "exercise [of] control" over the "property" of his estate, in violation of the automatic stay. We then examine whether SEFCU may be excused from promptly surrendering the vehicle because Weber had not provided "adequate protection" for SEFCU's security interest in the vehicle. Finally, because we conclude that SEFCU's actions did violate section 362, we then turn to the question whether, in light of its reliance on Alberto, SEFCU's violation was nonetheless "willful" under section 362(k), making it liable for Weber's actual damages, costs, and attorneys' fees under that section.

## I.

As observed above, section 541(a) provides that a bankruptcy estate is comprised of "all legal or equitable interests in property as of the commencement of the case."[6] Although SEFCU's repossession of the vehicle before Weber filed his petition lawfully overrode Weber's immediate possessory rights, the parties agree that New York law afforded Weber at least a continuing equitable interest in the vehicle. See Wornick v. Gaffney, 544 F.3d 486, 490 (2d Cir. 2008) ("Whether the debtor has a legal or equitable interest in property such that it becomes property of

---

[6] In relevant part, section 541 provides:

> (a) The commencement of a case under [11 U.S.C. §§ 301, 302, or 303] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> > (1) [Subject to exceptions not relevant here,] all legal or equitable interests of the debtor in property as of the commencement of the case.

9

the estate under section 541 is determined by applicable state law." (internal

quotation marks omitted)). That interest arose from Weber's right pursuant to the

state Uniform Commercial Code to redeem the vehicle before sale. See N.Y. U.C.C.

§ 9-623.[7] It was this right that SEFCU acknowledged and identified for Weber in

its notice to him dated January 11. Weber's equitable interest thus constituted

"property" of the bankruptcy estate under section 541. Neither party seriously

challenges the scope of that definition.

Rather, Weber and SEFCU dispute whether, by failing to surrender

the vehicle immediately upon receiving notice of the petition's filing, SEFCU

"exercise[d] control" over Weber's equitable interest in the vehicle and thereby

violated the stay imposed by section 362. The Supreme Court's decision in United

States v. Whiting Pools, Inc., 462 U.S. 198 (1983), provides important guidance for

our resolution of this issue.

The dispute in Whiting Pools arose when, to satisfy a tax lien, the IRS

seized all of the tangible personal property of the corporation. One day after the

seizure, the corporation filed for bankruptcy. The IRS moved for relief from the

automatic stay, wishing to be free to sell the personal property that it had seized in

---

[7] Weber retained other rights under state law consistent with his status as the equitable owner of the vehicle. These rights included a right to notification before the creditor disposed of the vehicle, N.Y. U.C.C. § 9-611, and a right to receive any surplus from the sale of the vehicle, id. § 9-615(d)(1). In addition, we observe that Weber may have retained legal title to the vehicle. See, e.g., N.Y. U.C.C. § 9-609; N.Y. Veh. & Traf. Law § 2115. But the parties have not briefed this question and we do not decide it here. That Weber has a colorable claim to have retained legal title to the truck, in addition to his acknowledged equitable interests in the vehicle, arguably serves to distinguish this case, however, from those in which legal title transferred to the creditor automatically upon repossession (or never was in the debtor to begin with). We express no view about the bearing of section 362 upon the latter situations.

satisfaction of the tax debts owed. The debtor corporation counterclaimed and, in the bankruptcy court, successfully sought an order under section 542 that required the IRS to return the property to the estate. Id. at 199-201.

The Supreme Court affirmed the bankruptcy court's turnover order. Characterizing the IRS's interest in the seized property as "its lien" – not ownership – and analogizing the Service's right to effect a seizure to the remedies available to private secured creditors, the Court described the seizure as "not determin[ing] the Service's rights to the seized property, but merely bring[ing] the property into the Service's legal custody." Id. at 210-11. It explained that "[i]n effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings," id. at 207, and "requires an entity . . . holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee." Id. at 205-06.

The Court underscored the Congressional intent, in shaping the definition of "property" set forth in section 541(a), to include "a broad range" of property in the estate, and indeed, to capture "any property made available to the estate by other provisions of the Bankruptcy Code." Id. at 204-05. Section 542(a) is such a provision. It requires delivery to the trustee of "any property of the debtor that the trustee can use under § 363," including property repossessed by a secured creditor. Id. at 205-06. "Any other interpretation of § 542(a)," the Court declared, "would deprive the bankruptcy estate of the assets and property essential to its

11

rehabilitation effort and thereby would frustrate the congressional purpose behind the reorganization provisions." Id. at 208.

For these reasons, the Court restricted the IRS – like any other creditor seizing property in which it held a security interest – to seeking protection of its interests "according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize." Id. at 212.

Similarly, here, SEFCU seized Weber's vehicle before Weber filed for bankruptcy, but under New York law, Weber retained at least an equitable interest in the property notwithstanding its repossession. SEFCU did not automatically obtain an ownership interest in the vehicle: its rights to seize and sell were subject to U.C.C. provisions of state law, including certain continuing rights held by Weber, and also subject to the rights and remedies established by the Bankruptcy Code. Whiting Pools teaches that, upon Weber's filing of his bankruptcy petition, Weber's equitable interest under state law gave the bankruptcy estate a possessory right in the secured property, as property that the trustee could use under section 363. Under section 542, that right took precedence over the state law possessory right of SEFCU. See id. at 207.

It is true that Whiting Pools involved a Chapter 11 corporate reorganization, and that the Supreme Court expressly reserved judgment as to whether its analysis would also apply to Chapter 13 personal reorganizations like

12

Weber's. 462 U.S. at 208 n.17. But, like other courts to have addressed the issue, we observe that the language of sections 541, 542, and 362 applies to the "estate," not just the "reorganization estate." See Austein v. Schwartz (In re Gerwer), 898 F.2d 730, 734 (9th Cir. 1990) (cited in In re Velichko, 473 B.R. 64, 67 (Bankr. S.D.N.Y. 2012)). We see no reason – and the parties have presented none – to restrict application of the reasoning of the Whiting Pools Court to corporate reorganizations: the same concerns apply fully in the Chapter 13 context as well. See, e.g., Thompson v. General Motors Acceptance Corp., 566 F.3d 699, 705-06 (7th Cir. 2009) (applying Whiting Pools in Chapter 13 setting and observing that the "purpose of reorganization bankruptcy, *be it corporate or personal*, is to allow the debtor to regain his financial foothold and repay his creditors") (emphasis added). As noted above, Weber required his vehicle to conduct his construction business; Whiting Pools required its equipment and other personal property to conduct its business. In each case, the reorganization's chances for success would seem markedly improved if operations could be maintained during the pendency of the petition and formulation of the plan.

Whiting Pools does not resolve, however, whether by demanding a turnover order of the bankruptcy court or "adequate protection" as a condition of its relinquishment, SEFCU "exercise[d] control" over the vehicle in contravention of the stay. In Whiting Pools, the IRS – unlike SEFCU – moved for relief from the stay, and did not simply wait for the debtor to initiate an adversary proceeding or

13

seek a turnover order under section 542. Id. at 201. Thus, the Court there held only that the bankruptcy court properly ordered the IRS to return the seized property to the estate under section 542. Id. at 212.

The district court's decision in Alberto, relied upon by SEFCU here, directly addressed the question left unanswered by Whiting Pools. The Alberto court concluded that a secured creditor did *not* violate the automatic stay when, after learning of the debtor's bankruptcy, it failed immediately to return a debtor's repossessed vehicle. 271 B.R. at 228. Rather, the court held that before such a secured creditor was obligated to surrender the collateral to the estate, the debtor must "take[ ] an affirmative step," such as obtaining a turnover order under section 542. Id. at 227. Because (as it found) a repossessed vehicle was not part of the debtor's estate until such an action had occurred, the court reasoned that a creditor that had taken possession of its security did not "exercise control" over "property" of the estate by declining to surrender the possessory interest to the estate. Id. at 228. Since the debtor no longer had a possessory interest, the court concluded, the creditor "did not 'act to obtain possession . . . or to exercise control' of the vehicle in violation of the stay, since it already lawfully possessed and controlled the vehicle when the stay went into effect." Id. at 226 (alteration in original) (quoting 11 U.S.C. § 362(a)(3)).

We find the Alberto court's reasoning unpersuasive. Section 541 expressly provides that the "property" of Weber's estate includes equitable interests,

14

and Weber's right to redeem and other rights catalogued above, together with his lingering claim to ownership of title, comprise such an interest. That SEFCU had already effected a repossession does not alter the conclusion that the equitable interest is property of the estate: section 541 provides further that the estate is comprised of property "wherever located and by whomever held." 11 U.S.C. § 541(a). Nor was Weber obligated to initiate an additional proceeding. Section 542 requires that any entity in possession of property of the estate deliver it to the trustees, without condition or any further action: the provision is "self-executing." Collier on Bankruptcy § 542.02 (16th ed. 2012) ("By its express terms, [section 542] is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover."). And Whiting Pools teaches that the filing of a petition will generally transform a debtor's equitable interest into a bankruptcy estate's possessory right in the vehicle.

As for whether SEFCU's refusal to return the vehicle to the estate violated the stay, section 362 forbids any act to "obtain possession" or "exercise control" over the property of the estate. We need consult only an ordinary dictionary to confirm that a typical definition of "control" is: "To exercise authority over; direct; command." Webster's New World College Dictionary (4th ed. 2002). In light of that definition, we see no way to avoid the conclusion that, by keeping custody of the vehicle and refusing Weber access to or use of it, SEFCU was

15

"exercising control" over the object in which the estate's equitable interest lay, and its retention of the vehicle violated the stay.

The Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments") confirms our conclusion. The 1984 Amendments, passed after the Whiting Pools decision in 1983, broadened the already sweeping provisions of the automatic stay even further to prohibit expressly not only "acts to obtain possession" of property of the estate, but also "any act . . . to exercise control over the property of the estate." Pub. L. No. 98-353, 98 Stat. 333, 371. This significant textual enlargement is consonant with our understanding and the Supreme Court's interpretation that Congress intended to prevent creditors from retaining property of the debtor in derogation of the bankruptcy procedure and the broad goals of debtor protection discussed above, without regard to what party was in possession of the property in question when the petition was filed. As the Seventh Circuit has pointed out, "Although Congress did not provide an explanation of that amendment, the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset suggests that it intended to include conduct by creditors who seized an asset pre-petition." Thompson, 566 F.3d at 702 (citation omitted).

The rule adopted by the Alberto court and urged on us by SEFCU – that some additional act by the debtor is required before the creditor is obligated to surrender the property – would, in contrast, place on the debtor or trustee the

16

burden of undertaking a series of adversary proceedings to pull together the bankruptcy estate, and thereby increase the costs of administering the estate and decrease the assets available to effect a successful reorganization. In our view, the plain language of section 542 (directing that those in custody of assets of the estate "shall deliver" them to the trustee); the approach of the Whiting Pools Court to equitable interests and bankruptcy estates; and the broad language of the 1984 Amendments enlarging the scope of the automatic stay point unmistakably away from any Congressional desire to impose such an additional burden on debtors seeking bankruptcy protection. As the Eighth Circuit wrote,

> [I]f persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of a bankruptcy court . . . to collect the estate for the benefit of creditors would be vastly reduced.

Knaus v. Concordia Lumber Co. (In re Knaus), 889 F.2d 773, 775 (8th Cir. 1989) (internal quotation marks omitted). SEFCU has identified no basis for concluding that Congress intended this result.

The district court's decision in Alberto also runs counter to the strong trend of decisions from our sister Circuits. For example, the Seventh Circuit has bluntly ruled that "a plain reading of the Bankruptcy Code's provisions, the Supreme Court's decision in [Whiting Pools], and various practical considerations require that a creditor immediately return a seized asset in which a debtor has an equity interest to the debtor's estate upon his filing of Chapter 13 bankruptcy."

17

Thompson, 566 F.3d at 700; see also Knaus, 889 F.2d at 775. Bankruptcy Appellate Panels from other Circuits agree. E.g., Unified People's Fed. Credit Union v. Yates (In re Yates), 332 B.R. 1, 7 (B.A.P. 10th Cir. 2005); TranSouth Fin. Corp. v. Sharon (In re Sharon), 234 B.R. 676, 682 (B.A.P. 6th Cir. 1999); Abrams v. Sw. Leasing & Rental Inc. (In re Abrams), 127 B.R. 239, 243 (B.A.P. 9th Cir. 1991).

Only the Eleventh Circuit has adopted a contrary approach, and those decisions have largely relied on readings of state law with regard to the relative legal property interests of debtor and secured creditor after a lawful repossession. See Bell-Tel Fed. Credit Union v. Kalter (In re Kalter), 292 F.3d 1350, 1356-60 (11th Cir. 2002) (applying Florida law); Charles R. Hall Motors, Inc. v. Lewis (In re Lewis), 137 F.3d 1280, 1284-85 (11th Cir. 1998) (applying Alabama law).

In our view, the majority rule adheres more faithfully to the text of the Bankruptcy Code and the reasoning of Whiting Pools. In addition, sound policy supports the majority's reading of the statutory text:

> The primary goal of reorganization bankruptcy is to group *all* of the debtor's property together in his estate such that he may rehabilitate his credit and pay off his debts; this necessarily extends to all property, even property lawfully seized pre-petition. An asset actively used by a debtor serves a greater purpose to both the debtor and his creditors than an asset sitting idle on a creditor's lot.

Thompson, 566 F.3d at 702 (citations omitted) (emphasis in original).

We therefore join the majority of other Circuits to have addressed this issue and conclude that section 362 requires a creditor in possession of property

18

seized as security – but subject to a state-law-based residual equitable interest in the debtor – to deliver that property to the trustee or debtor-in-possession promptly after the debtor has filed a petition in bankruptcy under Chapter 13.

## II.

SEFCU argues that even if the Code did not permit SEFCU to await a turnover order before relinquishing the vehicle, SEFCU was entitled to withhold the vehicle until Weber offered or the court ordered Weber to provide SEFCU "adequate protection" for SEFCU's security interest. Appellant's Br. 15. We need not pause long over this argument, for the plain text of the Bankruptcy Code contradicts this position. As we have observed, section 542(a) provides without qualification that anyone in possession of the property of the estate "shall deliver" it to the trustee. 11 U.S.C. § 542(a). The Code requires the creditor first to surrender the property. Only then or in conjunction with that surrender may it proceed to "request" from the Bankruptcy Court "adequate protection" for its interests. 11 U.S.C. §§ 362(d), 363(e).[8] The provisions authorizing imposition of such protection

---

[8] In relevant part, section 362(d) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

In relevant part, section 363(e) provides:

19

operate only upon application of the creditor to the Bankruptcy Court. Unlike section 542(a), these are not self-executing.

SEFCU points to no provision of the Code permitting a creditor to withhold property of the estate until the debtor has offered protection that is "adequate" in the *creditor's* view, separate from any formal proceeding before the Bankruptcy Court. Rather, the Code provides for protection that the *court* deems adequate: "[O]n request of an entity that has an interest in property used . . . by the trustee, the court . . . shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). See Sharon, 234 B.R. at 683 (holding that "[t]here is no 'exception' . . . that excuses [the creditor's] refusal to deliver possession of the Debtor's car based on [the creditor's] subjective opinion that adequate protection offered by the Debtor was not 'adequate'"). To hold otherwise would permit a creditor holding the debtor's property at the time of the debtor's bankruptcy filing to "negotiat[e] a better security package" than other creditors, thereby ensuring that creditor "a position above other secured creditors" and circumventing the bankruptcy court's authority to approve the debtor's plan to repay his or her debts. Thompson, 566 F.3d at 707.

SEFCU points principally to the Fourth Circuit's decision in Tidewater Finance Co. v. Moffett (In re Moffett), 356 F.3d 518 (4th Cir. 2004), in support of the

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased . . . by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

proposition that a secured creditor may await delivery of what it deems adequate protection before surrendering the debtor's property to the estate. But Moffett is inapposite. That case did not concern the creditor's assessment of whether the debtor's proffered protection was "adequate." Rather, there, the creditor moved in the bankruptcy court for relief from the stay, seeking permission to sell the previously repossessed vehicle. Id. at 520. The Fourth Circuit agreed with the bankruptcy court that the debtor's reorganization plan provided "adequate protection" to the creditor and declined to lift the stay, requiring the creditor to return the vehicle to the debtor. Id. at 523.

We easily conclude that SEFCU's belief that Weber had not provided "adequate protection" for SEFCU's security interest in the vehicle does not cure SEFCU's violation of section 362.

## III.

Finally, SEFCU asserts that even if its actions violated section 362, its violation was not "willful" within the meaning of section 362(k), and therefore the court may not require it to pay Weber's damages, costs, or attorneys' fees, or to impose any sanction. SEFCU asserts primarily that, because it relied in good faith on the Alberto decision and the "rule and custom" of the Northern District of New York, any violation that it committed should not be deemed "willful" under section 362(k). Appellant's Br. at 3.

21

We appreciate that, since one district court rendered its decision in Alberto, a practice may have developed in the Northern District of New York under which creditors felt entitled to await a turnover order and that SEFCU may therefore have felt justified in failing to surrender Weber's vehicle absent a court order. Nothing prevented SEFCU from surrendering the vehicle in response to Weber's request, however: it always was free to do so, and free concurrently to move the Bankruptcy Court for entry of an order that would – in the *court's* view – provide "adequate protection" to SEFCU. The creditor's error in this regard does not justify placing costs related to the vehicle's retention on the debtor.

Indeed, SEFCU misconstrues the meaning of "willful" as our Circuit law has construed the term in the context of section 362. A creditor willfully violates section 362 when it knows of the filing of the petition (and hence of the automatic stay), and has the general intent simply to perform the act found to violate section 362; no specific intent to violate section 362 is necessary. As we wrote over twenty years ago, "any deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages." Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, 1105 (2d Cir. 1990); see also In re Dominguez, 312 B.R. 499, 508 (Bankr. S.D.N.Y. 2004) ("[S]o long as the violator possessed general intent in taking actions which have the effect of violating the automatic stay the intent required by § 362(h) is satisfied."); Yates, 332 B.R. at 7 ("Whether the party believes

22

in good faith that it had a right to the property is not relevant to whether the act was willful or whether compensation must be awarded." (internal quotation marks omitted)). Section 362(k) operates to compensate the debtor who has been injured by the violation, in line with the distribution of the procedural burden struck by the statute, as discussed above, in favor of the estate and the bankruptcy mechanism. Because it intended to retain Weber's vehicle, SEFCU acted "willfully," and is liable for damages, costs, and attorney's fees under section 362(k)(1).

Although its good faith is insufficient to excuse SEFCU from liability for Weber's actual damages, it may prevent the imposition of punitive damages, which in any event Weber's counsel has conceded he no longer seeks.[9] See Crysen/Montenay Energy Co., 902 F.2d at 1105 ("An additional finding of maliciousness or bad faith on the part of the offending creditor warrants the further imposition of punitive damages . . . ."); see also In re Velichko, 473 B.R. at 69-70 (imposition of punitive damages premised on finding that secured creditor acted in bad faith by forcing debtors to sign reaffirmation agreement before relinquishing their vehicle).

## CONCLUSION

For the foregoing reasons, we conclude that by failing to deliver the repossessed vehicle to the debtor-in-possession promptly after receiving notice of the

---

[9] At oral argument, Weber's counsel confirmed that Weber does not seek punitive damages.

pending petition, SEFCU willfully violated section 362(a), and is liable under section 362(k) for Weber's actual damages, costs, and attorney's fees. The order of the district court is AFFIRMED, and the cause remanded to the district court for further proceedings consistent with this opinion. The district court may, if it chooses, remand the cause to the bankruptcy court for adjudication of the remaining issues, including Weber's costs.