**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

In re: JARED TRENTON COWEN,

    Debtor.

_____

WD EQUIPMENT, LLC; AARON
WILLIAMS; BERT DRING,

    Appellants,

v.

JARED TRENTON COWEN,

    Appellee.

No. 15-1413

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:14-CV-02408-REB)**
_____

Alexander M. Musz of Cohen & Cohen, P.C., Denver, Colorado, for Defendants–
Appellants.

C. Todd Morse of Morse Law, LLC, Denver, Colorado, for Plaintiff–Appellee.

_____

Before **KELLY**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

**McKAY**, Circuit Judge.
_____

Plaintiff Jared Trent Cowen's 2000 Peterbilt 379, a commercial truck, was in need of repair. To cover the cost, Mr. Cowen borrowed money from Defendant WD Equipment, which is owned and managed by Defendant Aaron Williams, in exchange for a lien on the truck and the promise of repayment. After the Peterbilt broke down again only a few weeks after the repairs, it was towed to a local repair company, which estimated that fixing the truck again would cost $9,000—more than Mr. Cowen could afford.

Because his Peterbilt was in the shop, Mr. Cowen could not make installment payments to WD Equipment. So, in early August, 2013, Mr. Cowen began taking steps to refinance the loan; he met with his bank and with his parents in an attempt to secure refinancing, and he exchanged several text messages on August 1 and 2 with Mr. Williams about paying off the loan. During the course of that exchange, however, Mr. Williams gave Mr. Cowen several, contradictory responses as to how much Mr. Cowen would need to pay to settle the debt, and he accelerated the payoff date several times, before ultimately setting August 6 as the deadline.

Around the same time, Mr. Cowen defaulted on another loan secured by another one of his trucks, a 2006 Kenworth T600. This loan was owed to Defendant Bert Dring, the father-in-law of Mr. Williams, who held a purchase-money security interest in the truck. On July 29, Mr. Dring lured Mr. Cowen under false pretenses to his place of business to repossess the Kenworth. Mr. Dring asked Mr. Cowen, who had brought along his young son, to leave the keys in the ignition, engine running, and to step out of the truck. As Mr. Cowen exited the vehicle, Mr. Dring jumped in,

– 2 –

grabbed the keys, and declared the truck "repossessed." When Mr. Cowen asked what was going on, Mr. Dring told him to take his son and leave—immediately. A group of five men gathered around Mr. Dring while he brandished a can of mace above his head and threatened to use it if Mr. Cowen did not leave. Mr. Cowen pushed his young son behind him to protect him, and the two left the lot on foot. Three days later, Mr. Cowen received a letter from Mr. Dring giving him ten days to pay off the Kenworth.

Instead, Mr. Cowen filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on August 6, which was the deadline for paying off the Peterbilt, and which was within the ten-day cure period for the Kenworth. He notified Defendants of the filing and requested the immediate return of both trucks. But Defendants refused: Mr. Williams claimed that he had changed the title to his name on August 1. (At no time during the text message exchanges on August 1 and 2 did Mr. Williams ever inform Mr. Cowen of the title change.) And Mr. Dring claimed that he sold the Kenworth sometime prior to the bankruptcy filing. (Initially, he claimed he had sold the Kenworth to an unknown Mexican national for cash in an undocumented sale just days before Mr. Cowen filed for bankruptcy. Later, Mr. Dring produced bill of sale, purporting to show that he sold the Kenworth to a Mr. Garcia for $16,000 in cash on August 4.)

About a month later, Mr. Cowen moved the bankruptcy court for orders to show cause why Defendants should not be held in contempt for willful violations of the automatic stay. The bankruptcy court granted the motions and ordered

– 3 –

Defendants to "immediately turn over" the trucks to Mr. Cowen; "[c]ontinuing failure to turn over the Truck[s]," the bankruptcy court warned, "may result in the imposition of monetary damages against the Creditors for willful violation of the automatic stay." Order on Motion for Order to Show Cause and Order to Turnover Property of the Estate, Case No. 13-23461 (Bankr. Colo. Sept. 5, 2013).

When Defendants did not comply with the bankruptcy court's turnover order, Mr. Cowen filed an adversary proceeding for violations of the automatic stay. A few months later, the bankruptcy court dismissed the underlying bankruptcy case because, without the trucks, Mr. Cowen had no regular income, which rendered him ineligible for Chapter 13 relief. However, the bankruptcy court expressly retained jurisdiction over the adversary proceeding.

During the adversary proceeding, Defendants again asserted that Mr. Cowen's rights in the trucks had been properly terminated by Defendants *before* the bankruptcy petition was filed, and so they could not have violated the automatic stay. But the bankruptcy court "did not find the Defendants' testimony that they had transferred title before the petition date to be credible." (App. Vol. II at 248.) It went on to "find[ ] that they manufactured the paperwork . . . after the bankruptcy filing." (*Id.*) "Defendants likely forged documents and gave perjured testimony" and "coached their witnesses on what to testify to during [ ] breaks" in an "attempt to convince the Court that [Mr. Cowen's] rights in the Trucks had been terminated pre-bankruptcy." (*Id.* at 258.) Additionally, the bankruptcy court held that "even if they had taken the actions they claim to have taken before the bankruptcy filing," (*id.* at

– 4 –

269), such actions contravened Colorado law, and therefore did not effectively terminate Mr. Cowen's "ownership interest in the Trucks," (*id.* at 252). And so, the bankruptcy court concluded, "[f]ailing to return the Trucks violated § 362(a)(3) of the Bankruptcy Code," (*id.*), and it imposed actual and punitive damages under 11 U.S.C. § 362(k)(1).

Defendants timely appealed this decision to the district court, which reversed on the calculation of damages but otherwise affirmed the bankruptcy court's order. Defendants then appealed to this Court, arguing, among other things, that the bankruptcy court exceeded its jurisdiction, that it lacked constitutional authority to enter a final judgment in this adversary proceeding, and that the bankruptcy court misinterpreted § 362—the automatic stay provision. "[T]hough this appeal comes to us from the district court, we review a bankruptcy court's decisions independently, examining legal determinations de novo and factual findings for clear error." *FB Acquisition Prop. I, LLC v. Gentry (In re Gentry)*, 807 F.3d 1222, 1225 (10th Cir. 2015). "In doing so, we treat the bankruptcy appellate panel or district court as a subordinate appellate tribunal whose rulings are not entitled to any deference (although they may certainly be persuasive)." *Nelson v. Long (In re Long)*, 843 F.3d 871, 873 (10th Cir. 2016) (internal quotation marks omitted). "A bankruptcy court's legal conclusions are reviewed de novo, while its factual findings are reviewed for clear error." *Id.*

We address first the bankruptcy court's jurisdiction. "The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by,

statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). By statute, bankruptcy courts have jurisdiction to "enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Stern v. Marshall*, 564 U.S. 462, 474 (2011) (quoting 28 U.S.C. § 157(b)(1)). As we have explained, a claim for damages under § 362(k)(1) for a violation of an automatic stay is a core proceeding. *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2009) (holding that a "§ 362(k)(1) proceeding . . . is a core proceeding because it derives directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case." (internal quotation marks and brackets omitted)). Accordingly, bankruptcy courts can exercise jurisdiction and adjudicate such claims to final judgment. *Id*.

Defendants contend, however, that the bankruptcy court erred in retaining jurisdiction over the § 362(k)(1) adversary proceeding after the underlying bankruptcy was dismissed. But this argument is foreclosed by *Johnson*. There it was argued that "dismissal of the underlying Chapter 13 case divested the bankruptcy court of jurisdiction over the § 362(k)(1) proceeding." *Id*. at 1081. We disagreed: "Nothing in the Bankruptcy Code mandates dismissal of the § 362(k)(1) proceeding when the bankruptcy case is closed," and "[n]o part of § 362(k)(1) suggests that a claim exists only while the bankruptcy case remains pending." *Id*. at 1084. We explained that "[r]equiring the dismissal of a § 362(k)(1) proceeding simply because the underlying bankruptcy case has been dismissed would not make sense. A court must have the power to compensate victims of violations of the automatic stay and

punish the violators, even after the conclusion of the underlying bankruptcy case." *Id*. at 1083.

Defendants' attempts to distinguish *Johnson* are unavailing. They argue that, unlike in *Johnson*, this § 362(k)(1) adversary proceeding is "non-core" because the bankruptcy court "had to determine the disputed possessory interests in [the] assets pursuant to state law." (Appellant's Br. at 36). But "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Defendants also seem to suggest that *Johnson* is distinguishable because there the bankruptcy court decided the automatic stay violation first, which was appealed (which, in turn, resulted in a remand), and *then* dismissed the underlying bankruptcy while the automatic stay violation appeal was pending. (*See* Appellant's Br. at 34 (citing *Johnson*, 575 F.3d at 1081, where we summarized the procedural history of the case)). But Defendants do not argue, much less persuade, why this discrepancy undermines the unequivocal holding of *Johnson*: "a § 362(k)(1) proceeding remains viable after termination of the underlying bankruptcy case." *Johnson*, 575 F.3d at 1084.

Defendants also contend that the bankruptcy court lacked constitutional authority under *Stern v. Marshall* to enter final judgment. But *Stern* dealt with claims that did not "stem[ ] from the bankruptcy itself" and would not "necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. A claim under § 362(k)(1) for an automatic stay violation, by contrast, "derives directly from the

– 7 –

Bankruptcy Code and can be brought only in the context of a bankruptcy case."
*Johnson*, 575 F.3d at 1083. Indeed, it necessarily "stems from the bankruptcy itself."
*Stern*, 564 U.S. at 499.

A claim for violating an automatic stay is not the "stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Stern*, 564 U.S. at 484 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in the judgment)). To the contrary, "we are concerned here with the adjudication of a right created by federal statute, rather than a private, state-created right, like that of concern in *Marathon*." *Mountain America Credit Union v. Skinner (In re Skinner)*, 917 F.2d 444, 449 (10th Cir. 1990) (holding that a bankruptcy court did not exceed its constitutional authority when it entered sanctions pursuant to 11 U.S.C. § 362(h), the precursor of § 362(k), for violating an automatic stay). And so, the bankruptcy court did not exceed its constitutional authority by entering final judgment in the § 362(k)(1) adversary proceeding.

To the merits. Mr. Cowen filed the adversary proceeding against Defendants for violating "[s]ection 362, which establishes the automatic stay." *Johnson*, 575 F.3d at 1083. "When a debtor files for bankruptcy, section 362 prevents creditors from taking further action against him except through the bankruptcy court." *Id.* (quoting *Price v. Rochford*, 947 F.2d 829, 831 (7th Cir. 1991)). To accomplish this, § 362 provides in relevant part that a bankruptcy petition "operates as a stay. . . of. . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Below, the bankruptcy court held that "[t]he failure to return the Trucks to [Mr. Cowen] post-petition constituted a continuing violation of the stay"; specifically, Defendants "violated § 362(a)(3) of the Bankruptcy Code." (App. Vol. II at 252.) As the district court noted, the bankruptcy court applied what appears to be the majority rule: "that the act of passively holding onto an asset constitutes 'exercising control' over it, and such action violates section 362(a)(3) of the Bankruptcy Code." *Thompson v. Gen. Motors Acceptance Corp.*, 566 F.3d 699, 703 (7th Cir. 2009); *see also Weber v. SEFCU (In re Weber)*, 719 F.3d 72, 81 (2d Cir. 2013), *California Emp't Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir. 1996), *Knaus v. Concordia Lumber Co. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir. 1989), *Unified People's Fed. Credit Union v. Yates (In re Yates)*, 332 B.R. 1, 4 (B.A.P. 10th Cir. 2005); *but see United States v. Inslaw*, 932 F.2d 1467, 1474 (D.C. Cir. 1991). Defendants disagree with this interpretation of § 362(a)(3), and we agree with Defendants.

The majority rule seems driven more by "practical considerations," *Weber*, 719 F.3d at 80, and "policy considerations," *Thompson*, 566 F.3d at 703, than a faithful adherence to the text. But "[o]ur interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (internal quotation marks omitted). In this case, it is also where the inquiry ends, "for where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its

terms." *Frieouf v. United States (In re Frieouf)*, 938 F.2d 1099, 1102–03 (10th Cir. 1991).

Here again is § 362(a)(3), in relevant part:  a bankruptcy petition "operates as a stay. . . of. . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  Breaking down the sentence, "any act" is the prepositive modifier of both infinitive phrases.  In other words, § 362(a)(3) prohibits "any act to obtain possession of property" or "any act to exercise control over property."  "Act", in turn, commonly means to "take action" or "do something." *New Oxford American Dictionary* 15 (3d ed. 2010) (primary definition of "act").  This section, then, stays entities from *doing* something to obtain possession of or to exercise control over the estate's property.  It does not cover "the act of passively holding onto an asset," *Thompson*, 566 F.3d at 703, nor does it impose an affirmative obligation to turnover property to the estate.  "The automatic stay, as its name suggests, serves as a restraint only on acts to gain possession or control over property of the estate." *Inslaw*, 932 F.2d at 1474.  Stay means stay, not go.

The majority rule reads too much into the section's legislative history.  Prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984, "the Code's stay provision only prohibited any act to obtain possession of property belonging to a bankruptcy estate." *Thompson*, 566 F.3d at 702.  The 1984 Amendments "broadened the already sweeping provisions of the automatic stay even further to prohibit expressly not only 'acts to obtain possession' of property of the estate, but also 'any

– 10 –

act . . . to exercise control over the property of the estate.'" *Weber*, 719 F.3d at 80 (quoting Pub. L. No. 98–353, 98 Stat. 333, 371). Notwithstanding that "Congress did not provide an explanation of that amendment," the majority reads from "the mere fact that Congress expanded the provision to prohibit conduct above and beyond obtaining possession of an asset," that Congress "intended to prevent creditors from retaining property of the debtor." *Weber*, 719 F.3d at 80. "This significant textual enlargement is consonant with [the majority rule]." *Id.*

But Congress does not "hide elephants in mouseholes." *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 468. The amendments are equally "consonant" with another, less sweeping conclusion. "Since an act designed to change control of property could be tantamount to obtaining possession and have the same effect, it appears that § 362(a)(3) was merely tightened to obtain full protection." *In re Bernstein*, 252 B.R. 846, 848 (Bankr. D.D.C. 2000). "[U]se of the word 'control' in the 1984 amendment to § 362(a)(3) suggests that the drafters meant to distinguish the newly prohibited 'control' from the already-prohibited acts to obtain 'possession,' in order to reach nonpossessory conduct that would nonetheless interfere with the estate's authority over a particular property interest." Ralph Brubaker, *Turnover, Adequate Protection, and the Automatic Stay (Part II): Who is "Exercising Control" Over What?*, 33 No. 9 Bankruptcy Law Letter NL 1 (September 2013).

It's not hard to come up with examples of such "acts" that "exercise control" over, but do not "obtain possession of," the estate's property, e.g., a creditor in possession who improperly sells property belonging to the estate. Similarly,

– 11 –

"intangible property rights that belong to the estate, such as contract rights or causes of action are incapable of real possession unless they are reified. Yet, (a)(3) preserves and guards against interference with them by staying any act to exercise control over estate property." *In re Hall*, 502 B.R. 650, 665 (Bankr. D.D.C. 2014). If Congress had meant to add an affirmative obligation—to the automatic *stay* provision no less, as opposed to the *turnover* provision—to turn over property belonging to the estate, it would have done so explicitly. The majority rule finds no support in the text or its legislative history.

In the end, the best argument for the majority rule is that § 362 should be read in conjunction with another part of the bankruptcy code—§ 542, the turnover provision, which provides that any entity "in possession, custody, or control, during the case of property that the trustee may use, sell, or lease under section 363 of this title. . . *shall* deliver" such property to the trustee "unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542 (emphasis added). According to the majority, "Section 542 requires that any entity in possession of property of the estate deliver it to the trustees, without condition or any further action: the provision is self-executing." *Weber*, 719 F.3d at 79 (internal quotation marks omitted); *but see Hall*, 502 B.R. at 654–665. Reading these two sections together ostensibly furthers "[t]he primary goal of . . . bankruptcy," *Thompson*, 566 F.3d at 702, i.e. "to group all of the debtor's property together," *id*., because "[a]s a practical matter, there is little difference between a creditor who obtains property of the estate before bankruptcy is filed, or after bankruptcy is filed," *Yates*, 332 B.R. at

– 12 –

5. "The ultimate result is the same—the estate will be deprived of possession of that property," which is "precisely the result § 362 seeks to avoid." *Id.* And so, the argument goes, "§ 542 provides the right to the return of estate property, while [§ 362] provides the remedy for the failure to do so." *Abrams v. Sw. Leasing & Rental, Inc. (In re Abrams)*, 127 B.R. 239, 242–43 (B.A.P. 9th Cir. 1991).

But this policy argument, too, is simply not supported by the statute's text or its legislative history. Even if the turnover provision were "self-executing" (which we do not decide), there is still no textual link between § 542 and § 362. And, contrary to one argument for the majority rule, *see id.* at 243, bankruptcy courts do not need § 362 to enforce the turnover of property to the estate. Bankruptcy courts have "broad equitable powers" under 11 U.S.C. § 105(a), *see Scrivner v. Mashburn (In re Scrivner)*, 535 F.3d 1258, 1263 (10th Cir. 2008), and can provide equitable relief as "necessary or appropriate to carry out the provisions of" § 542(a), *see id.* (citing 11 U.S.C. § 105(a)). Moreover, § 105(a) "grants bankruptcy courts the power to sanction conduct abusive of the judicial process." *Id.* (internal brackets and quotation marks omitted); *see also Skinner*, 917 F.2d at 447 (holding that "section 105(a) empowers bankruptcy courts to enter civil contempt orders," including for monetary damages). And so, adhering to the text of the statute, as we must, we adopt the minority rule: only affirmative acts to gain possession of, or to exercise control over, property of the estate violate § 362(a)(3).

Today's decision does not absolve Defendants of liability, however. On remand, the damages award may be sustainable under the proper application of §

362(a)(3) and under § 105(a), which "grants bankruptcy courts the power to sanction conduct abusive of the judicial process." *Scrivner*, 535 F.3d at 1263. The bankruptcy court here "found the Defendants' attitudes while testifying to be contemptuous of the bankruptcy process, the Debtor, and the Court." (App. Vol. II at 258). It also found that Defendants "manufactured the paperwork . . . after the bankruptcy filing." (*Id*. at 248.). And it noted that Defendants "likely forged documents and gave perjured testimony," and "coached their witnesses on what to testify to during [ ] breaks." (*Id*. at 258). This was all done in an "attempt to convince the Court that [Mr. Cowen's] rights in the Trucks had been terminated pre-bankruptcy." (*Id.*) These would qualify as post-petition acts to exercise control over the debtor's property in violation of the automatic stay.

We **REVERSE** the judgement of the district court and **REMAND** to the district court, which may remand the case to the bankruptcy court, for further proceedings consistent with this opinion. We **GRANT** the renewed motion to seal volume five of the appendix.